**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CA. No. 05-330T |
| | : | |
| ARIES D. CRUDUP | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITION 28 U.S.C. § 2255 MOTION**

## I. INTRODUCTION

Petitioner Aries D. Crudup has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## II. STATEMENT OF THE CASE

On April 19, 1998, defendant-appellant Aries D. Crudup was convicted in Rhode island on a state charge of delivering a controlled substance. (Presentence Report ("PSR") at ¶¶ 15 & 25.) He received a one-year sentence, with six months to serve, six months suspended, and one year of probation. (PSR at ¶ 25.)

On May 11, 2000, Crudup was again convicted in Rhode Island on a state charge of delivering a controlled substance. (PSR at ¶ 27.) This time, he received an eight-year sentence, with four months to serve, 102 months suspended, and 102 months of probation. (PSR at ¶ 27.)

On September 28, 2000, Crudup was convicted in Rhode Island on a state charge of larceny from a person. (PSR at ¶¶ 15 & 26.) He received a five-year suspended sentence and five years of probation. (PSR at ¶ 26.)

On September 3, 2001, the police received a report that there was a man with a gun outside an apartment at 136 Dodge Street in Providence. (PSR at ¶¶ 8 & 33.) When the police responded to the scene, two officers heard a gun shot in the vicinity. (PSR at ¶¶ 8 & 33.) Another officer broadcast that he saw a man, later identified as Crudup, running across a nearby field toward Cranston Street. (PSR at ¶¶ 8 & 33.) Officers gave chase and ordered Crudup to stop and drop the gun but he kept running. (PSR at ¶¶ 8 & 33.) As Crudup approached Cranston Street, Patrolwoman Amy Bibeault saw that Crudup was chambering a round into the gun. (PSR at ¶¶ 8 & 33.) Bibeault ordered Crudup to drop the gun but he refused to do so. (PSR at ¶¶ 8 & 33.) Bibeault then tackled Crudup and a .9mm pistol fell from his hands. (PSR at ¶¶ 8 & 33.) Crudup attempted to grab the gun but other officers ultimately subdued him. (PSR at ¶¶ 8 &33.) The gun contained one live round in the chamber. (PSR at ¶ 8.) Seventeen bags of cocaine were found in the pocket of Crudup's pants. (PSR at ¶ 33.) Crudup admitted that he was a cocaine dealer. (PSR at ¶ 33.)

On May 8, 2002, a Rhode Island Superior Court Judge found that Crudup had violated the terms of the suspended sentences that had received in the larceny case and the 2000 drug case. (PSR at ¶¶ 26 & 27.) In the larceny case, the Judge simply continued Crudup on his suspended sentence. (PSR at ¶ 26.) In

the 2000 drug case, however, the Judge activated the suspended sentence and sentenced Crudup to 103 months in prison. (PSR at ¶ ¶ 1 & 27.)

On May 30, 2002, Crudup was convicted in Rhode Island on a state drug charge that apparently stemmed from his possession of the 17 bags of cocaine. (PSR at ¶¶ 8, 16, 32 & 33.)

On August 21, 2002, a federal grand jury in the District of Rhode Island returned an indictment charging that Crudup, a previously convicted felon, knowingly possessed a .9 mm pistol, in violation of 18 U.S.C. § 922 (g)(1). On September 27, 2002, Crudup pled guilty to the charge.

The Probation Office calculated Crudup's sentence as follows. Crudup's base offense level was 24. (PSR at ¶ 15.) A four-level enhancement was required because Crudup had possessed the gun while committing a felony drug offense. (PSR at ¶ 15.) Crudup was entitled to a three-level reduction for acceptance of responsibility, yielding a total offense level of 25. (PSR at ¶¶ 22 & 23.) Crudup was in Criminal History Category IV. (PSR at ¶ 28.) The applicable sentencing range was 84 to 105 months in prison. (PSR at ¶ 49.)

At the May 2, 2003 sentencing hearing, Crudup asked the district court to make his federal sentence run concurrently (or at least partially concurrently) with the 103-month state sentence that he was then serving (which had been based on his

violation of the terms of the suspended sentence he had received in the 2000 drug case). The court rejected the request on the ground that it was contrary to Application Note 6 of USSG § 5G1.3 and First Circuit precedent. The court also explained the policy rationale for this result. "So he's really serving a sentence for violating the terms of his probation in that [earlier] drug conviction, and if the Courts took the position that sentences for subsequent offense should be concurrent, then there would be no consequence to violating the terms of your probation, and that just can't be so. The First Circuit has, I think, recognized that." The court then sentenced Crudup to 84 months in prison, to be served consecutively to the state sentence.

## III. THE LAW OF INEFFECTIVE ASSISTANCE

Under Strickland v. Washington, 446 U.S. 668, 104 S.Ct. 2052 (1984), a defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

1. That his counsel's performance "fell below and Objective standard of reasonableness;" and
2. "[A] reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 446 U.S. at 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly dificient

performance. Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001) (citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir. 1993)).

In assessing the adequacy of counsel's performance:

> [T]he Court looks to "prevailing professional norms." A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.

Ramirez v. United States, 17 F. Supp. 2d 63, 66 (D.R.I. 1998), quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 446 U.S. at 688.

**IV. ARGUMENT**

In this 2255 petitioner raises five arguments as to why his sentence should be vacated, four of which are ineffective assistance of counsel claims and the fifth is a Booker claim.

First, petitioner states that before his arrest on the federal charge that he had been shot at in August 2001 and stabbed in 2000. He argues that his lawyer in the federal felon in possession charge, Edward C. Roy, Esq., should have presented this information to the court before sentencing and that thus petitioners sentencing guideline range would have been lower. The government surmises that petitioner means that these alleged

assaults constitute some form of justification for his carrying a firearm. Such information would have had no effect on petitioner's guideline range. Petitioner cites U.S. v. Bell, 214 F.3d 1299 (11th Cir. 2000). That case kills his argument. It requires unlawful, present, immediate, impending threat of death or serious bodily injury. Petitioner refers to incidents that took place over a year before he possessed the pistol.

Second, petitioner argues that his lawyer, Mr. Roy, did not make him or the court aware that a drug charge against petitioner in state court had not been resolved. He claims that this led to a 4 level increase in his guideline range. He says that Mr. Roy was thus ineffective.

The Probation Office researched petitioner's record and came to the conclusion set forth. In any event there was no need for the drug felony to have been resolved as a conviction. The government described the underlying facts in its prosecution version and defendant did not contest those facts. Defendant had read the presentence report and voiced no objection to that part of the conclusion.

The guideline range was properly calculated and petitioner's criminal history properly taken into account. The four level enhancement was required because petitioner had possessed the gun while committing a drug felony offense.

Third, petitioner argues that Mr. Roy ineffectively

presented the court with information that petitioner mother's health required petitioner's presence as the primary care giver. Petitioner further argues that the district court erred in denying his motion for a downward departure based on extraordinary family circumstances. Mr. Roy presented the court with a statement of the situation and copies of letters from defendant's mother, her physician and two family friends. The burden for a downward departure for extraordinary family circumstances is great and simply because petitioner did not meet that burden does not mean he was ineffectively represented. The facts of petitioner's situation simply did not warrant a downward departure. Nor has he set forth any additional facts in the instant motion. In any event, defendant was given constitutionally satisfactory assistance.

Fourth, petitioner argues that there is a "prima facie case of collusion" between the Rhode Island attorney general's office and the federal prosecutor. What that means is not clear. Petitioner goes on to complain that he was found to be a probation violator in state court based on the facts which formed the basis of the federal firearms charge. There is nothing wrong with that. It simply means that the state court prosecutors were properly doing their job.

Finally, petitioner mentions the Booker case. The First Circuit has ruled in two cases that Booker is not retroactive. Cirilio-Munoz v. United States, 404 F.3d 527 (2005) and United States v. Fraser, 402 F.3d 9 (2005.)

Petitioner's motion should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Zechariah Chafee

ZECHARIAH CHAFEE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2005, a copy of the within Government's Memorandum in Opposition to Petitioner's 28 U.S.C. § 2255 Motion, was mailed by regular mail, postage prepaid, to the following:

Aries D. Crudup
Prisoner #113845
Adult Correctional Institution
P.O. Box 8249
Cranston, RI 02920

Paula Horsey